UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SHAMIEKA PIERRE | * | CIVIL ACTION |
| VERSUS | * | NO. 21-1043 |
| WELLPATH, LLC, ET AL. | * | SECTION "L" (2) |

## REPORT AND RECOMMENDATION

This matter was automatically referred to the undersigned United States Magistrate Judge pursuant to Local Rule 73.2(C) and 28 U.S.C. § 636(b)(1)(B) and (C).[1]  Pending before me now is Defendant Marlin Gusman's Motion to Dismiss.  ECF No. 21.  Plaintiff Shamieka Pierre filed a timely Opposition Memoranda.  ECF No. 27.  Defendant Gusman sought leave and filed a Reply Memorandum.  ECF Nos. 28, 31.  No party requested oral argument in accordance with Local Rule 78.1, and the Court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, IT IS RECOMMENDED that Defendant Gusman's motion to dismiss Count 7 (respondeat superior liability for Deputy Grillier's alleged false imprisonment) be GRANTED *without* leave to amend and IT IS FURTHER RECOMMENDED that the motion to dismiss Count 4 (negligence-failure to protect), Count 5 (negligence-failure to train and supervise) and Count 7 (respondeat superior liability for Deputy Grillier's alleged negligence) be GRANTED *with* leave to amend.

---

[1] A preliminary conference has not yet been scheduled as Plaintiff obtained an extension of time through November 26, 2021 within which to serve Defendant Paul Grillier.  ECF No. 20.  A preliminary conference will be scheduled once the period for service has expired or all defendants have appeared.

I.    **BACKGROUND**

Plaintiff Shamieka Pierre filed this complaint against her employer Wellpath, LLC ("Wellpath") and its client Orleans Parish Sheriff Marlin Gusman and Deputy Paul Grillier asserting claims of sexual harassment and retaliation against Wellpath and negligence against all defendants. ECF No. 1, at 9–16. Plaintiff alleges that she was employed as a medical assistant at the Orleans Justice Center ("OJC") by Wellpath and Sheriff Gusman. *Id.* ¶ 15, at 3. She contends that, while working as a medical assistant at the OJC, a nurse asked her to draw blood from an inmate on pod 4B. *Id.* ¶¶ 18 & 20, at 4. When Defendant Deputy Grillier initially brought the inmate to the door, the inmate was shirtless, so Plaintiff asked him to put on a shirt. *Id.* ¶¶21–25, at 4. Defendant Grillier allegedly instructed Plaintiff to go to the pod's visitation booth to draw the inmate's blood, in violation of OJC policy. *Id.* ¶¶27–30, at 5. Plaintiff contends that, while drawing the inmate's blood on the pod, multiple inmates surrounded her, with their pants down while masturbating. *Id.* ¶¶34–36, at 5. As she was leaving the pod, one inmate grabbed her buttocks, others groped parts of her body, and some pulled on her clothes, but Defendant Grillier simply watched television instead of protecting her. *Id.* ¶¶38–45, at 6.

Defendant Sheriff Gusman filed a Motion to Dismiss seeking dismissal of Plaintiff's claims of negligence (failure to protect and failure to train and supervise (Counts 4 and 5)) against him and for respondeat superior liability based on Defendant Grillier's alleged negligence and false imprisonment (Count 7), citing the exclusivity provisions of Louisiana's Worker's Compensation provisions (La. Rev. Stat. § 23:1032).[2] ECF No. 21, at 1. Alternatively, Sheriff Gusman contends that the claims should be dismissed under the duty/risk analysis and the doctrine of discretionary

---

[2] Defendant Wellpath, LLC previously filed a Partial Motion to Dismiss seeking dismissal of plaintiff's negligence claim against it on the basis of the same exclusivity provision. ECF Nos. 11; 11-1, at 3. Plaintiff responded with no objection (ECF No. 17), and the undersigned recommended that Defendant Wellpath's Motion for Partial Dismissal be granted, dismissing with prejudice the negligence claim (Count 4) against Wellpath. ECF No. 26.

immunity.  *Id.* at 1–2.  Sheriff Gusman seeks dismissal of the respondeat superior liability claim based on false imprisonment because, he contends, Plaintiff cannot establish that she was detained, as required for a false imprisonment claim.  *Id.* at 2.

Plaintiff opposes the motion.  ECF No. 27.  Although Plaintiff concedes that her Complaint alleges that Sheriff Gusman was her employer, she asks for leave to amend based on discovery indicating that she was an independent contractor, not an employee, of Sheriff Gusman.  *Id.* at 3–4.  She also contends that she cannot be considered his statutory employee.  *Id.* at 4–5.  Plaintiff argues that she has set forth sufficient factual allegations, and raised new factual allegations, that satisfy the "reasonably foreseeable" prong of the duty/risk analysis (*id.* at 5–7) and that Defendant Grillier assumed a duty to protect her when he sent her on the pod, but he breached that duty.  *Id.* at 7–8.  She argues that discretionary immunity does not apply to a claim of negligence at an operational level and in violation of mandatory policy.  *Id.* at 8–10.  As to the respondeat superior claims, Plaintiff argues that, for the same reasons as set forth with regard to the negligence claims against Defendant Gusman, her negligence claims against Defendant Grillier survive, thus providing a basis for respondeat superior liability as to Defendant Gusman.  *Id.* at 10.  She concedes, however, that she cannot proceed on the basis of respondeat superior liability as to Defendant Gusman on her false imprisonment claim, and accordingly, consents to dismissal of that claim.  *Id.*

Arguing that a plaintiff cannot amend a complaint through a brief, Defendant Gusman reiterates his demand for dismissal of the tort claims based on the worker's compensation exclusivity provisions.  ECF No. 31, at 1–3.  Likewise, he argues that Plaintiff cannot rely on facts outside of her complaint to support her contention that the inmate's behavior was reasonably foreseeable.  *Id.* at 3.  With regard to discretionary immunity, Defendant Gusman argues that the

Sheriff's alleged failure to train and supervise is consistently found to be a ministerial rather than operational function and that no state law, regulation or policy prescribed how the sheriff must train and supervise.  ECF No. 31, at 3–4.

## II.   APPLICABLE LAW

### A.  Rule 12 Dismissal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."  A motion to dismiss for failure to state a claim is not meant to resolve disputed facts or test the merits of a lawsuit.[3]  Rather, it tests whether, in plaintiff's best-case scenario, the complaint states a plausible case for relief.[4]

The Supreme Court clarified the Rule 12(b)(6) standard of review in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  To avoid dismissal, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face (i.e., the factual allegations must "be enough to raise a right to relief above the speculative level").[5]  It is not enough to allege facts consistent with a claim because the allegations must move past possibility and to plausibility of "entitlement to relief."[6]  If the "facts" alleged are "merely consistent" with those minimally required to establish liability, the complaint "stops short of the line between possibility and plausibility."[7]

> Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

---

[3] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).
[4] *Id.*
[5] *Twombly*, 550 U.S. at 555 (citation omitted).
[6] *Id.* at 557–58; *Iqbal,* 556 U.S. at 678.
[7] *Iqbal,* 556 U.S. at 678 (citation omitted).

complaint has alleged—but it has not "shown"—"that the pleader is entitled to relief."[8]

The complaint need not contain detailed factual allegations, but it must offer more than labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[9]  The complaint must include enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[10]  Although all well-pleaded facts are accepted as true and the complaint is considered in the light most favorable to the plaintiff, the Court should not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[11]

### B.  The Duty/Risk Analysis Applicable to Claims of Negligence

Article 2315 of the Louisiana Civil Code provides a cause of action for negligence:  "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  La. Civ. Code art. 2315(a).  Under Louisiana's duty-risk analysis of negligence liability, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element).[12]

---

[8] *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citation omitted) (stating that where the facts do not allow the court to infer more than a mere possibility of misconduct, the complaint does not show that the pleader is entitled to relief).

[9] *Iqbal*, 556 U.S. at 678.

[10] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[11] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (same); *see also Twombly*, 550 U.S. at 555 (The "obligation to provide the grounds of [] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citations and internal quotation marks omitted).

[12] *Butler v. Denka Performance Elastomer, L.L.C.*, 16 F.4th 427 (5th Cir. 2021) (citing *Lemann v. Essen Lane Daiquiris*, 2005-1095 (La. 2006); 923 So. 2d 627, 633); *see also Carroll v. Am. Empire Surplus Lines Ins. Co.*, 289 F. Supp. 3d 767, 770 (E.D. La. 2017) (listing five elements).

Duty is the "threshold issue."[13]  And while Louisiana imposes a "universal duty" to use "reasonable care," plaintiff must still assert a "specific standard" of care under any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty.[14]  Whether a legal duty exists, and the scope or extent of that duty, are questions of law that depend on the facts and circumstances and the parties' relationship.[15]  In determining the existence and extent of a duty, Louisiana law considers

> moral, social, and economic factors, including: 1) whether the imposition of a duty would result in an unmanageable flow of litigation; 2) the ease of association between the plaintiff's harm and defendant's conduct; 3) the economic impact on society and similarly situated parties; 4) the nature of the defendant's activity; 5) moral considerations, particularly victim fault; 6) precedent; and 7) the direction in which society and its institutions are evolving.[16]

## C. **Louisiana's Worker's Compensation Exclusivity**

Louisiana's worker's compensation statute provides that "[i]f an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated."  La. Stat. Ann. § 23:1031.  If Louisiana's worker's compensation law applies, it precludes other remedies, such as tort remedies:

> Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal

---

[13] *Butler*, 2021 WL 4810639, at *10.
[14] *Id.* (citations omitted).
[15] *McLachlan v. New York Life Ins. Co*., 488 F.3d 624, 627 (5th Cir. 2007) (citation omitted) ("Under Louisiana law, the existence of a duty, and the corollary issue whether the duty extends to protect a particular plaintiff from a particular harm, are questions of law usually determined together, case-by-case.").
[16] *Id.* at 627–28 (citations omitted).

or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.

La. Rev. Stat. § 23:1032(A)(1)(a).  Thus, an employee injured in the course of his employment is generally not allowed to recover tort damages against his employer as his exclusive remedy lies in worker's compensation, absent injury from an intentional act.[17]  This intentional act exception to the compensation provisions is narrowly construed.[18]  To qualify for the exception, Louisiana requires a strong link between the employer's conduct and the employee's injury.[19]

A prerequisite to workers' compensation coverage "is the existence of an employer-employee relationship."[20]  Thus, workers' compensation typically does not apply to independent contractors:

> "Independent contractor" means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter.

---

[17] *Clinton v. Reigel By–Prods., Inc.*, 42,497 (La. App. 2 Cir. 9/19/07 ); 965 So. 2d 1006, 1009 (citing La. Rev. Stat. § 23:1032(A))..

[18] *Reeves v. Structural Pres. Sys.*, 98-1795 (La. 3/12/99); 731 So. 2d 208, 211..

[19] *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1328 (5th Cir. 1996) (citation omitted).  The Louisiana Supreme Court has defined "intentional act" as when a "person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct, or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." *Bazley v. Tortorich*, 397 So. 2d 475, 481 (La. 1981).  "'Substantially certain to follow' requires more than a reasonable probability that an injury will occur, and 'certain' has been defined to mean 'inevitable' or 'incapable of failing.'  *Reeves*, 731 So. 2d at 213 (citation omitted).  Gross negligence does not equate to an intentional act, nor does the failure to provide safety equipment or a violation of safety standards typically suffice to establish liability under the intentional act exception.  *Id.*  Mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer suffice. *Id.* (citing *Tapia v. Schwegmann Giant Supermarkets, Inc.*, 590 So. 2d 806, 807–08 (La. App. 4th Cir. 1991)).

[20] *Campora v. Falstaff, L.L.C.*, 2001-2014 (La. App. 4 Cir. 6/12/02); 823 So. 2d 389, 392 (citing *Jordan v. Cent. Mgmt. Co.*, 99-748 (La. App. 3 Cir. 10/13/99); 745 So.2d 116, 120).  The employment relationship is ordinarily evidenced by four factors: (1) selection and engagement; (2) payment of wages; (3) power of dismissal; and (4) power of control.  *Id.*  No single factor is determinative, but the totality of the circumstances must be considered.  *Id.*

La. Stat. Ann. § 23:1021(7). "Whether a worker is properly classified as an employee or an independent contractor is a factual question that must be resolved on a case-by-case basis."[21]  In addition, there are exceptions to the "independent contractor" exclusion, such as the manual laborer[22] and statutory employee[23] exceptions.  Thus, even if a worker is an independent contractor, the worker may still be subject to the workers' compensation laws if the employee is also found to be a "statutory employee."[24]

### D.  Respondeat Superior Liability

The principle of respondeat superior or vicarious liability is codified in Louisiana's Civil Code, which provides, in pertinent part: "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."  La. Civ. Code art. 2320.  "Vicarious liability rests in a deeply rooted sentiment that a business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to

---

[21] *Progressive Paloverde Ins. Co. v. Est. of Jenkins*, No. 19-12840, 2021 WL 707750, at *2 (E.D. La. Feb. 23, 2021) (citing *Tower Credit, Inc. v. Carpenter*, 2001-2875 (La. 9/4/02), 825 So. 2d 1125, 1129). Louisiana courts use the "control test" to determine a worker's employment status, which requires courts to inspect the degree of control over the work reserved by the principal.  *Id.* (citation omitted).

[22] An independent contractor falls under the "manual labor exception" when a substantial part of his work time is spent in manual labor in carrying out the terms of his contract with the principal and the work performed by him is a part of the principal's trade, business or occupation.  *Lushute v. Diesi*, 354 So. 2d 179, 182 (La. 1977) (emphasis added); *see also Steinfelds v. Villarubia*, 2010-0975 (La. App. 4 Cir. 12/15/10); 53 So. 3d 1275, 1281 (citing *Lushute*, 354 So. 2d at 182, *Miller v. Higginbottom*, 33, 594, p. 6 (La. App. 2 Cir. 6/21/00); 768 So.2d 127, 132; *Guidry v. Gueydan Co–Op. Dryer, Inc*., 97-874, p. 4 (La. App. 3 Cir. 12/10/7); 706 So.2d 146, 150).  This exception applies when the manual laborer is in direct contractual privity with the principal.  *See Lushute*, 354 So.2d at 181–82 ("[A]n independent contractor is covered under the workmen's compensation law only when a substantial part of his work time is spent in carrying out the *terms of his contract* with the principal . . .") (emphasis added).

[23] When the manual laborer is the payroll employee of an intermediate contractor, La. Rev. Stat. § 23:1061 applies to determine whether the payroll employee of the intermediary contractor is the statutory employee of another entity. *See Kirkland v. Riverwood Int'l USA, Inc.*, 95-1830 (La. 9/13/96); 681 So.2d 329, 331.

[24] *Mitchell v. S. Scrap Recycling, L.L.C.*, 2011-2201 (La. App. 1 Cir. 6/8/12); 93 So. 3d 754, 759 (citing La. Rev. Stat. § 23:1032, 1061; *Johnson v. Tenn. Gas Pipeline Co*., 99 F. Supp. 2d 755, 758 (E.D. La. 2000) (citing *Salmon v. Exxon Corp*., 824 F. Supp. 81, 84 (M.D. La. 1993))); *Morgan v. Gaylord Container Corp*., 30 F.3d 586, 589–91 (5th Cir. 1994) ("Louisiana extends [workers' compensation] immunity to persons who contract with others to perform work which is a part of the person's 'trade, business, or occupation.'  In such a circumstance, the person becomes the worker's 'principal,' or 'statutory employer'  Thus, a principal is immunized from tort liability if the contract work being performed was a part of the principal's trade, business, or occupation.").

be characteristic of its activities."[25]  Generally, for employer liability to attach, there must be an employment relationship and the tortious act must be committed within the scope and course of employment.[26]  Unlike vicarious liability arising in an employment relationship, a principal is generally not liable for offenses committed by an independent contractor while performing its contractual duties[27] absent operational control.[28]

### E.  Discretionary Immunity

Louisiana's discretionary immunity statute, La. Rev. Stat. § 9:2798.1, confers immunity from suit to state officers when the allegations are based on the performance of state discretionary acts that are within the course and scope of their lawful powers and duties.[29]  This discretionary function immunity only applies to policymaking or discretionary acts.[30]  It does not protect against legal fault or negligent conduct at the operational level, only for policy decisions (i.e. decisions based on social, economic, or political concerns[31]) at the policy-making or ministerial level.[32]

---

[25] *Olmeda v. Cameron Int'l Corp.*, 139 F. Supp. 3d 816, 834 (E.D. La. July 13, 2015) (internal quotations omitted) (quoting *Richard v. Hall*, 2003-1488 (La. 4/23/04), 874 So. 2d 131, 138).

[26] *E.g., West v. Rieth*, 152 F. Supp. 3d 538, 543 (E.D. La. 2015).

[27] *Cole v. Seal Enter., Inc.*, No. 20-2248, 2021 WL 2351125, at *5 (E.D. La. June 9, 2021) (Feldman, J.); *see also Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987) (holding that principal is not liable for independent contractor's negligence unless it is engaged in an ultrahazardous activity or the principal exercises operational control).

[28] A principal exercises operational control only when it has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way.  *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003) (holding that no operational control existed where the independent contractor was "exclusively responsible for controlling the details" of its performance despite the on-site presence of the principal's representatives).

[29] *See Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005); *see also Smith v. Lafayette Par. Sheriff's Dep't*, 2003-517 (La. App. 3d Cir. 4/21/04); 874 So. 2d 863, 868 (holding that sheriff's hiring/retention was a discretionary act under La. R.S. § 9:2798.1) (citing *Gregor v. Argenot Great Cent. Ins. Co.*, (La. 5/20/03); 851 So.2d 959, 964 (holding that the statute provides "immunity from liability for offenses and quasi offenses of public entities, as defined therein, when the acts or omissions of the public entities are policymaking or discretionary acts or omissions.")).

[30] *Cloud v. Stone*, No. 18-1070, 2019 WL 238066, at *2 (W.D. La. Jan. 16, 2019) (citing *Poche v. Gautreaux*, 973 F. Supp. 2d 658, 674 (M.D. La. 2013) (quoting *Gregor*, 851 So. 2d 959 at 967)).

[31] *Mitchell v. City of New Orleans*, 184 F. Supp. 3d 360, 377–78 (E.D. La. 2016) (denying Rule 12 motion based on discretionary immunity where pleadings did not reflect the exercise of discretion grounded in social economic or political policy).

[32] *Lockett v. City of New Orleans*, 639 F. Supp. 2d 710, 745 (E.D. La. 2009) (quoting *Saine v. City of Scott*, 2002-265 (La. App. 3 Cir. 6/12/02); 819 So. 2d 496), *aff'd*, 607 F.3d 992, (5th Cir. 2010); *see also Randle v. Tregre*, 147 F. Supp. 3d 581, 593 (E.D. La. 2015), *aff'd*, 670 F. App'x 285 (5th Cir. 2016).

Although courts have historically recognized that a sheriff's hiring, training and supervision of its deputies generally constitute discretionary acts,[33] in 2017, the Louisiana Legislature adopted minimum initial training and annual training requirements in addition to the longstanding requirement that training be conducted only by accredited training centers.  La. Rev. Stat. §§ 40:2404.2; 40:2405.3.   Moreover, "acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct" are not subject to this provision.[34]   Discretionary immunity is in the nature of an affirmative defense that must be specifically asserted in the answer and for which defendant bears the burden of proof.[35]

## F.  <u>Leave to Amend</u>

In Plaintiff's Opposition, Plaintiff argues that the motion to dismiss should be denied because she can amend her complaint to cure the alleged inadequate pleading by adding additional factual allegations.  *See* ECF No. 27.  In view of the consequences of dismissal on the complaint alone, and the preference to decide cases on the merits rather than the sufficiency of pleadings, courts often afford at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiff is unwilling or unable to amend in a manner that will avoid dismissal.[36]

---

[33] *See, e.g., Roberts v. City of Shreveport*, 397 F.3d 287 (5th Cir. 2005); *Skinner v. Ard*, No. 19-66-JWD-EWD, 2020 WL 699740, at *10 (M.D. La. Feb. 11, 2020); *Hoffpauir v. Columbia Cas. Co*., No. 12-403-JJB, 2013 WL 5934699, at *12 (M.D. La. Nov. 5, 2013).

[34] La. Rev. Stat. § 9:2798.1(C)(2).

[35] *White v. City of New Orleans*, 2000-2683 (La. App. 4 Cir. 1/9/01); 806 So.2d 675, 677; *Johnson v. Orleans Par. Sch. Bd*., 2006-1223 (La. App. 4 Cir. 1/30/08); 975 So.2d 698, 710.

[36] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 329 (5th Cir. 2002) ("[I]t is not unusual for plaintiffs who oppose a motion to dismiss to request leave to amend in the event the motion is granted.  Although the denial of such a motion may not be an abuse of discretion, our cases support the premise that granting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim . . . . In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies . . . .") (internal quotations and citations omitted).

III.    **ANALYSIS**

Plaintiff's allegation that she was employed by Sheriff Gusman necessarily precludes her tort claims against him under the exclusivity provisions of Louisiana's worker's compensation provisions.  Accordingly, dismissal of all claims against Sheriff Gusman in Plaintiff's Complaint (Counts 4, 5 and 7), in its current form, is appropriate.  Considering the relevant Rule 15(a) factors applicable to requests for leave to amend[37] and consistent with the preference to resolve cases on the merits rather than the adequacy of the pleadings,[38] however, the undersigned recommends that Plaintiff be granted thirty (30) days to amend her complaint to set forth the necessary factual allegations to support her argument that Sheriff Gusman may be liable in tort based on her status as an independent contractor rather than an employee, to identify the applicable duty forming the basis of her negligence claim, and to identify any alleged operational negligence relevant to the discretionary immunity analysis.

IV.    **CONCLUSION**

For the foregoing reasons,

IT IS RECOMMENDED that Defendant Sheriff Gusman's Motion to Dismiss (ECF No. 11) be GRANTED as set forth herein:

Plaintiff's respondeat superior claim against Sheriff Gusman based on Defendant Grillier's alleged false imprisonment (part of Count 7), should be dismissed, without leave to amend.

---

[37] The five relevant considerations for examination by the court in determining whether to grant leave to amend a complaint are: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment.  *Smith v. EMC Corp*., 393 F.3d 590, 595 (5th Cir. 2004) (*citing Rosenzweig v. Azurix Corp*., 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).
[38] *Hart v. Bayer Corp*., 199 F.3d 239, 247 n.6 (5th Cir. 2000).

Plaintiff's claims of negligence (failure to protect in Count 4 and failure to train and supervise in Count 5) and for respondeat superior liability based on Defendant Grillier's alleged negligence (Count 7) should be dismissed, with leave to amend.

IT IS FURTHER RECOMMENDED that Plaintiff be granted thirty (30) days within which to file an Amended Complaint to remedy the deficiencies in the Complaint.  Should she fail to amend within the specified time, then her claims against Sheriff Gusman for negligence (failure to protect in Count 4 and failure to train and supervise in Count 5) and respondeat superior liability (Count 7) should be dismissed with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. [39]

New Orleans, Louisiana, this 17th day of November, 2021.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[39] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).