**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **SHAMIEKA PIERRE** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 21-1043** |
| **WELLPATH, LLC, ET AL.** | * | **SECTION "L" (2)** |

**ORDER AND REASONS**

Before the Court is Defendant Sheriff Susan Hutson and former Sheriff Marlin Gusman's "Partial Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint." R. Doc. 43. Plaintiff Shamieka Pierre opposes the motion. R. Doc. 48. Considering the briefing of the parties, the record, and the applicable law, the Court now rules as follows.

## I. BACKGROUND

Plaintiff Shamieka Pierre filed this case against her employer Wellpath, LLC, ("Wellpath") and its client, Orleans Parish Sheriff Susan Hutson, Former Sheriff Marlin Gusman, and Sheriff's Deputy Paul Grillier.[1] Plaintiff asserted claims for sexual harassment and retaliation against Wellpath, and state law negligence claims against Sheriff Hudson in her official capacity, former Sheriff Gusman, in his individual capacity, and Deputy Grillier, in his individual and official capacities. R. Doc. 39. Plaintiff alleges that she worked for Wellpath as a

[1] Plaintiff originally named former Orleans Parish Sheriff Marlin Gusman as a defendant, both in his individual and official capacities. Sheriff Susan Hutson replaced former Sheriff Gusman as the Sheriff of the Orleans Parish Sheriff's Office (OPSO) when she was sworn into office on May 2, 2022. Under Federal Rule of Civil Procedure 25(d), where a public official is a party to an action in his or her official capacity and ceases to hold office during the pendency of the case, the "officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). Accordingly, under Rule 25(d), Sheriff Hutson has been automatically substituted in place of Sheriff Gusman as to Plaintiff's official capacity claims. Nonetheless, Sheriff Gusman remains a party to the action with regard to Plaintiff's individual capacity claims and will be referred to as former Sheriff Gusman.

medical assistant at the Orleans Justice Center ("OJC"), the pre-trial detention center for Orleans Parish criminal defendants. *Id.*

Plaintiff alleges that, on July 7, 2020, she was subjected to sexual assault and harassment while providing medical care at OJC. According to Plaintiff, Wellpath's Director of Nursing, Tonyell Jones, instructed her to draw blood from an inmate in housing pod 4B. *Id.* at 6. Upon arriving to pod 4B, Plaintiff was met by Deputy Paul Grillier, who was staffing the pod. Plaintiff asked Deputy Grillier to retrieve Inmate #1. Grillier complied, and Inmate #1 came to the door to the pod. Inmate #1 was shirtless and was accompanied by Inmate #2 and Inmate #3, the latter of whom was also shirtless. *Id.* Plaintiff asked Inmate #1 to put on a shirt. Deputy Grillier then invited Plaintiff "to come onto the pod," but Plaintiff refused because it is against Orleans Parish Sheriff's Office ("OPSO") policy for a medical assistant to draw blood on the pod. Deputy Grillier allegedly assured Plaintiff that he would protect her, stating, "I got you, I'll watch you." *Id.* at 7.

Deputy Grillier allegedly instructed Plaintiff to go to the pod's visitation booth to draw Inmate #1's blood. Plaintiff entered the pod where Inmate #4 was present. Inmates #2 and #3 immediately followed Plaintiff into the booth. Plaintiff could only exit the booth from the way she had entered, and inmates stood between her and the exit. Deputy Grillier allegedly closed the pod door, watched inmates surround Plaintiff, and walked away. *Id.* Plaintiff then told Inmate #3, who was shirtless, to leave the booth. Inmate #3 did not comply.

Deputy Grillier returned to the visitation booth and permitted Inmate #5 to enter. As Plaintiff attempted to prepare her instruments to draw Inmate #1's blood, Inmate #6 approached the visitation booth. At this point, all six inmates were positioned between Plaintiff and Deputy Grillier. Four of the six were shirtless.

Inmate #5 then allegedly pulled down his pants in front of both Plaintiff and Deputy Grillier, who did nothing in response. *Id.* Inmates #7 and #8 then entered the pod and Inmate #7 handed Inmate #6 a blanket, which he used to cover his body. Then, while standing next to Deputy Grillier, Inmate #6 allegedly began to masturbate as he watched Plaintiff. *Id.* at 8. At the same time, Inmate #3 allegedly had his hands down his pants while standing directly in front of Plaintiff. Deputy Grillier allegedly proceeded to walk away and watch television. *Id.*

Plaintiff allegedly swatted Inmate #3 and told him to stop masturbating. He momentarily stopped but kept his hands in his pants. Meanwhile, Plaintiff hurriedly searched for a vein in Inmate #1's arm. While she did so, Inmates #3 and #8 walked away. However, Inmates #5 and #6 continued to masturbate under a blanket and just outside of the visitation booth. Deputy Grillier allegedly walked back to the visitation booth, looked at the inmates, and permitted them to continue. *Id.*

Plaintiff then found a vein to draw blood from Inmate #1. While Plaintiff waited for the vial to fill up, Deputy Grillier again allegedly walked away and Inmates #3 and #8 returned and began masturbating in front of Plaintiff.

After finishing drawing blood from Inmate #1, Plaintiff attempted to exit the area by pushing through with her cart. *Id.* at 9. But several inmates blocked her path. She called for assistance from Deputy Grillier, who allegedly was, once again, watching television. *Id.*

As Plaintiff pushed through the inmates, Inmate #3 allegedly grabbed her buttocks, other inmates groped other parts of her body, and some pulled on her clothes. Plaintiff alleges that Deputy Grillier never intervened or attempted to protect her.

Eventually, Plaintiff made her way to the pod door and called to be let out. As she exited the pod, Inmates #5 and #6 continued to masturbate under blankets. *Id.* at 9-10. Deputy Grillier,

allegedly for the first time, pushed these inmates. *Id.* at 10. After leaving the pod, Plaintiff allegedly was met by OPSO Sergeant McGill who advised Plaintiff that he had been informed about the assault by Central Security. Sergeant McGill interviewed Plaintiff about the assault and asked her to write a statement. *Id.*

Following the alleged assault, Plaintiff avers that she was met with hostility and retaliation by Wellpath. Plaintiff alleges that she spoke with Nurse Jones spoke about 30 minutes after the accident. *Id.* Nurse Jones allegedly told Plaintiff that she was sorry about what happened and told Plaintiff to take unpaid sick leave. *Id.* Agents with OPSO's Investigation Services Bureau (ISB) then interviewed Plaintiff about the assault. Plaintiff alleges that one of the investigators made accusatory comments, asking "Why did you put yourself in that situation?" and "Why didn't you just leave?" *Id.*

Several days after the assault, Plaintiff allegedly asked Nurse Jones if she could return to work. Nurse Jones replied that Wellpath was waiting on ISB to approve Plaintiff's return. For two weeks, Plaintiff waited to be placed back on the work schedule. She was not paid during this period. *Id.* at 11. "Eventually, [Plaintiff] contacted Nurse Jones's supervisor and Human Services Administrator (HSA) to ask whether ISB had approved her return to work." *Id.* Contrary to what Nurse Jones had stated, the HSA informed Plaintiff that Wellpath was not waiting for ISB approval and she could come back to work. *Id.*

Once Plaintiff returned to work, Nurse Jones allegedly again told her she had to take blood samples on the pods. Plaintiff explained to Nurse Jones several times that she did not feel comfortable because of the assault and refused to go on the pods. *Id.* Nurse Jones called Plaintiff in for a meeting. Nurse Jones purportedly told Plaintiff that she had to start doing blood work because there was "pressure from 'higher-ups' for not keeping up with the demand of labs." *Id.*

Nurse Jones also suggested that Wellpath would provide counseling services; however, Plaintiff has not been able to schedule an appointment despite several attempts.

In addition, after Plaintiff returned to work, Nurse Jones allegedly told her "not to listen to the rumors" going around about the assault. *Id.* After further inquiry, Plaintiff allegedly learned that OPSO deputies and Wellpath staff believed she encouraged the assault by the inmates and that she enjoyed the attention. As a result of the alleged sexual assault and subsequent retaliation, Plaintiff has suffered severe emotional distress and anxiety. *Id.* at 12.

Based on these experiences, Plaintiff filed suit on June 1, 2021, asserting claims against Wellpath for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964 and its state law analog, the Louisiana Employment Discrimination Law, La. R.S. 23:332(A)(1). Plaintiff also asserts that the Sheriff and Deputy Grillier were negligent for failing to protect her. Last, Plaintiff claims that the Sheriff was negligent for failing to train and supervise her employees and is liable under the theory of *respondeat superior*.

In answer, the Sheriff and Sheriff Gusman assert a number of affirmative defenses, including that Plaintiff's claims are barred by the doctrine of discretionary immunity or worker's compensation exclusivity. R. Doc. 44 at 20. Deputy Grillier also asserts the same affirmative defenses. R. Doc. 56 at 19. And Wellpath's answer contends that Plaintiff's claims are time-barred and that it cannot be liable because it took reasonable steps to present a hostile environment from occurring. R. Doc. 42 at 1-2.

This Court earlier adopted the magistrate judge's report and recommendation granting Wellpath's motion to dismiss Plaintiff's negligence claims and the Sheriff and Sheriff Gusman's motion to dismiss *respondeat superior* claims based on Deputy Grillier's alleged false imprisonment and negligence and for failure to protect, train and supervise. R. Doc. 38. Plaintiff

was granted 30 days to file an amended complaint to cure deficiencies in her pleading, *id.* and, on December 22, 2022, Plaintiff timely amended. R. Doc. 39.

## II.      PRESENT MOTION

Sheriff Susan Hutson, in her official capacity, and former Sheriff Marlin Gusman, in his individual capacity, move to dismiss Count Five of Plaintiff's complaint, which alleges negligence on the part of the Sheriff for failing to train and supervise Deputy Grillier.[2] R. Doc. 43 at 1. Defendants argue that, even if Sheriff Gusman negligently trained or supervised Deputy Grillier, they are immune from claims regarding such negligence under the defense of discretionary immunity set out in La. Rev. Stat. § 9:2798.1. R. Doc. 43-1 at 3.[3] Defendants contend that, under this defense, sheriffs are immune from state tort claims regarding decisions that are both discretionary and based in policy considerations. *Id.* Defendants argue that their decisions about the training and supervision of sheriff's deputies meet both these requirements: the decisions were discretionary because the Sheriff has autonomy to train the deputies as the Sheriff wished and the decisions were policy-based because they were dictated by economic concerns. *Id.* at 5. Defendants assert that they are thus entitled to discretionary immunity, and Plaintiff is therefore unable to prevail on her claim of negligent failure to train and supervise. *Id.* at 3. Thus, according to Defendants, Count Five of Plaintiff's complaint should be dismissed.

---

[2] Because the motion expressly refers to both individual and official capacity claims, and because Sheriff Hutson has been substituted as a party defendant, the Court refers to Sheriff Hutson as regards Plaintiff's official capacity claims and Sheriff Gusman as regards Plaintiff's individual capacity claims in Count Five.

[3] Here, Plaintiff's operative complaint does not specify whether Count Five is brought as an individual capacity claim, an official capacity claim, or both. Nevertheless, Sheriff Hutson and former Sheriff Gusman treat Count Five as asserting both types of claims and invoke discretionary immunity as to each. And as noted *infra*, the doctrine of discretionary immunity applies equally to both official and individual capacity claims. *See* La. Rev. Stat. § 9:2798.1. Accordingly, the Court's analysis of the applicability of the doctrine here is the same regardless of whether Plaintiff brings Count Five as an official capacity claim, an individual capacity claim, or both.

Plaintiff opposes the motion. She asserts that the Sheriff's decisions about the training and supervision of deputies do not constitute discretionary actions based on policy considerations, as required to invoke discretionary immunity. R. Doc. 48 at 1. First, Plaintiff avers that the Sheriff's decisions about training and supervision were not "discretionary" because La. Rev. Stat. §§ 40.2404.2 and 40.2405.8 dictate how sheriffs must train their deputies. *Id.* at 4. Second, Plaintiff argues that the Sheriff's training decisions were not grounded in "policy considerations" but rather involved negligence at the operational level. *Id.* Thus, Plaintiff argues that the Sheriff cannot successfully assert discretionary immunity, and her claim against the Sheriff for negligent training and supervision should be allowed to continue. *Id.*

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating a 12(b)(6) motion, the Court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). However, a court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

## IV. DISCUSSION

Here, Defendants argue for dismissal of Plaintiff's individual and official capacity claims in Count Five under the doctrine of discretionary immunity. R. Doc. 43 at 1. Based in Louisiana law, discretionary immunity is an affirmative defense that shields from liability "public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." La. Rev. Stat. § 9:2798.1. Courts have created a two-step process to determine whether a decision is a "policymaking or discretionary act" such as to warrant immunity under this statute. *Glaster v. City of Mansfield*, No. CIV.A. 14-627, 2015 WL 852412, at *10 (W.D. La. Feb. 26, 2015). "First, a court must determine whether a state law, regulation, or policy specifically prescribes the officer's course of action." *Id.* If the public entity or officer's action is thus restrained, then their conduct is not "discretionary," and the defense of discretionary immunity is not available. *Id.* Alternatively, if the action is discretionary, the court moves on the second step: determining "whether the challenged action is grounded in political, economic or social policy." *Id.* Discretionary immunity is only available if such a policy consideration motivates the challenged action. *Id.*

Here, Defendants cannot show, at this stage, that the affirmative defense of discretionary immunity precludes Plaintiff's claim. Plaintiff specifically alleges in her operative complaint that the Sheriff had a mandatory duty to train and supervise deputies in accordance with certain officer training requirements described in La. Rev. Stat. §§ 40:2404.2 and 40:2405.8 and that the Sheriff was negligent in regards to this duty to train and supervise. R. Doc. 39 at 21. The Court notes that, on their face, these statutes indeed mandate officer training requirements; for example, one provision requires officers to be trained for a certain number of hours. La. Rev.

Stat. § 40:2404.2. The negligent failure of the Sheriff to abide but such a mandatory policy would thus deprive the Sheriff of a discretionary immunity defense. *See, e.g.*, *Williams v. City of Monroe*, 27,065 (La. App. 2 Cir. 7/3/95), 658 So. 2d 820, 828 (holding that the Department of Transportation and Development, a public entity, was not entitled to discretionary immunity when it failed to act in accordance with mandatory statutory requirements). Taking as true Plaintiff's allegation that the Sheriff's actions regarding training and supervision were thus prescribed by statute, then the Sheriff's conduct was not "discretionary." *Glaster* 2015 WL 852412, at *10. Accordingly, the Sheriff cannot, at this time, pass the first prong of the discretionary immunity test—demonstrating that the challenged policy was indeed discretionary. Plaintiff has therefore defeated Defendant's motion.

Moreover, even if the Sheriff could clear the first step of the discretionary immunity analysis, the Sheriff would fail at the second step. As Louisiana courts have held, "[w]hether a choice made by a governmental entity is a policy-making decision as contemplated by the discretionary immunity statute is a question of fact." *Williams*, 658 So. 2d at 828 (quoting *Thibodeau v. Mayor of Morgan City*, 619 So. 2d 595 (La. App. 1 Cir.) *rev'd in part on other grounds by* 629 So.2d (La. 1993). Thus, whether the Sheriff's actions were based in policy considerations is a factual inquiry properly addressed after an appropriate period for discovery rather than at the motion to dismiss stage.

Because Plaintiff has pleaded facts which, if true, would defeat Defendants' discretionary immunity defense, the Court cannot grant Defendants' motion to dismiss. Both Sheriff Hutson and former Sheriff Gusman may reargue the discretionary immunity defense at a later stage; however, discovery is needed before the Court can make a determination on the merits of this issue.

## V.     CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Partial Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint, R. Doc. 43, is **DENIED**.

New Orleans, Louisiana, this 23rd day of June, 2022.

Eldon E. Fallon
United States District Judge